SAMANTHA C. GRANT, Cal. Bar No. 198130
E-mail: SGrant@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  310-228-3700
Facsimile:   310-228-3701

WHITNEY NONNETTE PERRY, Cal. Bar No. 295222
E-mail: WNonnettePerry@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213-620-1780
Facsimile:   213-620-1398

Attorneys for Defendant
NORTHROP GRUMMAN SYSTEMS
CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| RICHARD THOMPSON,<br><br>        Plaintiff,<br><br>     v.<br><br>NORTHROP GRUMMAN SYSTEMS CORPORATION, a Delaware Corporation; and DOES 1 to 100, Inclusive,<br><br>        Defendants. | Case No. 2:20-cv-6333<br><br>**DEFENDANT NORTHROP GRUMMAN SYSTEMS CORPORATION'S NOTICE OF REMOVAL OF CIVIL ACTION**<br><br>(Removed from LASC Case No. 20STCV20807)<br><br>[*Filed concurrently with Civil Cover Sheet, Declarations of Whitney Nonnette Perry, Susie L. Choung and Julie Lauck in Support of Removal, Request for Judicial Notice, Certification of Interested Parties, and Corporate Disclosure Statement*]<br><br>(Diversity Jurisdiction: 28 U.S.C. §§ 1332, 1441, 1446) |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on this date, Defendant Northrop Grumman Systems Corporation ("Northrop") did and hereby does remove the above-entitled action from the Superior Court of California for the County of Los Angeles to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1332 and 1441 because there is complete diversity between Plaintiff Richard Thompson ("Plaintiff") and Northrop and the amount in controversy exceeds $75,000.  The removal of this action terminates all proceedings in the Superior Court of California for the County of Los Angeles.  *See* 28 U.S.C. section 1446(d).

Northrop removes this action to United States District Court for the Central District of California, pursuant to 28 U.S.C. sections 1332, 1441, and 1446 based on the following:

1.    On June 2, 2020, Plaintiff filed a complaint (the "Complaint") entitled *Richard Thompson  v. Northrop Grumman Systems Corporation, a Delaware corporation; and Does 1 through 100, Inclusive*, Case No. 20STCV20807, in the Superior Court of the State of California for the County of Los Angeles (the "State Court Action").

2.    On June 18, 2020, Plaintiff served Northrop with the Summons and Complaint in the State Court Action.  A true and correct copy of the Complaint served on Northrop is attached as **Exhibit A** to the declaration of Whitney Nonnette Perry ("Nonnette Perry Decl.").  A true and correct copy of the Summons served on Northrop is attached to the Nonnette Perry Decl. as **Exhibit B**.  Along with the Summons and Complaint, Plaintiff also served Northrop with a Notice of Case Assignment Unlimited Civil Case, which is attached to the Nonnette Perry Decl. as **Exhibit C**.

SMRH:4820-3067-2578.4

3.      On June 30, 2020, Plaintiff served Northrop with a Notice of Case Management Conference.  A true and correct copy of the Notice of Case Management Conference served on Northrop is attached to the Nonnette Perry Decl. as **Exhibit D**.

4.      Northrop filed and served an answer in the State Court Action on July 15, 2020.  A true and correct copy of the Answer is attached to the Nonnette Perry Decl. as **Exhibit E**.

5.      **Copies of All Process, Pleadings and Orders.**  The Summons, Complaint, Notice of Case Assignment, Notice of Case Management Conference and Answer (Exhibits A-E to the Nonnette Perry Decl.) constitute all process, pleadings and orders in the State Court Action within the meaning of 28 U.S.C. section 1446(a).

6.      **All Named Defendants Join in Removal.**  Northrop is the only named defendant in this action and the only defendant served with the Summons and Complaint, so there are no other parties to join in this Notice of Removal. Defendant "Does 1 through 100" have not been identified, nor is there any record of their having been served with the Summons or the Complaint in the State Court Action.  28 U.S.C. § 1441(a).

7.      **Removal is Timely.**  This Notice of Removal is being filed within thirty (30) days after the State Court Action became subject to removal on June 18, 2020 and within one year of the date the State Court Action was filed on June 2, 2020.  Therefore, the Notice of Removal is timely filed pursuant to 28 U.S.C. section 1446(b).

8.      **Proper Venue.**  The United States District Court for the Central District of California is the District within which said Superior Court of California for the County of Los Angeles case is pending.

## DIVERSITY JURISDICTION

9.     This Court has original jurisdiction of this action based upon diversity of citizenship under 28 U.S.C. section 1332.  Northrop may remove the State Court Action to this Court, pursuant to the provisions of 28 U.S.C. section 1441(b), because it is a civil action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Complete diversity of citizenship exists because:

10.     **Plaintiff's Citizenship.**  Allegations on information and belief as to citizenship are sufficient to support removal.  *See Ehrman v. Cox Communications*, 932 F.3d 1223, 1227 (9th Cir. 2019) ("[A] defendant's allegations of citizenship may be based solely on information and belief.").  Northrop is informed and believes that Plaintiff is at the time of filing this Notice of Removal and was, at the time of filing his Complaint, a citizen of the State of California, within the meaning of 28 U.S.C. Section 1332(a).  Declaration of Julie Lauck ("Lauck Decl."), ¶ 4. Moreover, this Court has found that "a plaintiff who alleges he or she is a resident of a state in a state court complaint creates a rebuttable presumption of domicile in that state."  *Dourian v. Stryker Corp.*, No. CV 12-1790 DSF (CWX), 2012 WL 12893752, at *1 (C.D. Cal. Apr. 25, 2012).  Plaintiff concedes in the Complaint that he is an "individual residing in the State of California." *See* Nonnette Perry Decl., Exh. A (Complaint), ¶ 1.

11.     **Defendant Northrop's Citizenship.**  Pursuant to 28 U.S.C. section 1332(c)(1), a corporation shall be deemed to be a citizen of every State by which it has been incorporated and of the State where it has its principal place of business. Northrop is a citizen of Delaware and Virginia and is not a citizen of California, as shown below.

12.     Northrop is incorporated in the state of Delaware.  *See* Northrop's Request For Judicial Notice in Support of Removal, Exh. A (California Secretary of

-4-

1  State Business Entity Detail); *see also* Declaration of Susie L. Choung ("Choung

2  Decl."), ¶ 2; Nonnette Perry Decl., Exh. A (Complaint),¶ 3.

3       13.    Principal place of business for purposes of diversity jurisdiction is

4  determined using the "nerve center" test.  *See Hertz Corp. v. Friend*, 130 S. Ct.

5  1181, 1183, 175 L. Ed. 2d 1029, 1032 (2010).  Under the "nerve center" test, the

6  principal place of business is "the place where the corporation's high level officers

7  direct, control, and coordinate the corporation's activities."  *See Hertz Corp.*, 130 S.

8  Ct. 1181 at 1183.  The nerve center "should normally be the place where the

9  corporation maintains its headquarters —provided that the headquarters is the actual

10  center of direction, control, and coordination."  *Id.* at 1184.  The Supreme Court

11  emphasized in *Hertz* that the "nerve center test" should be one of "administrative

12  simplicity."  *Id.*

13       14.    Northrop's principal place of business is at the time of filing this Notice

14  of Removal, and was as of the date of the filing of the Complaint in the State Court

15  Action, in the State of Virginia, as established by the following facts:

16       15.    The headquarters, the principal operations center, and the place of

17  Northrop's high level officers who direct and control the operations, as of the date

18  of the filing of the Complaint and now, are in Falls Church, Virginia.  *See* Choung

19  Decl., ¶¶ 2-3.  Its corporate headquarters is in Falls Church, Virginia.  Northrop's

20  headquarters is where most of the executives have their offices, where the

21  administrative and financial officers are located, and where most of the day-to-day

22  control of the business is exercised.  *Id*. at ¶ 3. As such, Northrop is a citizen of the

23  State of Delaware and the State of Virginia and not a citizen of the State of

24  California. Therefore, Plaintiff and Northrop are citizens of different states.

25       16.    **Doe Defendants**.  Pursuant to 28 U.S.C. section 1441(a), the residence

26  of fictitious and unknown defendants should be disregarded for purposes of

27  establishing removal jurisdiction under 18 U.S.C. section 1332.  *Firstos v. Reynolds*

28  *Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not

1    required to join in a removal petition); *Fat T, Inc. v. Aloha Tower Assocs. Piers 7, 8*
2    *& 9*, 172 F.R.D. 411, 415 (D. Haw. 1996) ("[I]n light of Ninth Circuit case-law, this
3    Court finds that Doe defendants do not destroy diversity jurisdiction.").  Thus, the
4    existence of Doe Defendants 1-100, inclusive, does not deprive the Court of
5    jurisdiction.

6         18.    **The Amount in Controversy Exceeds $75,000.**  Where a plaintiff
7    does not specify a particular amount of damages in the Complaint, a removing
8    defendant must show that the amount in controversy "more likely than not" exceeds
9    the jurisdictional minimum of the court.  *See Sanchez v. Monumental Life Ins. Co.*,
10   102 F.3d 398, 404 (9th Cir. 1996).  Therefore, Northrop needs to show only that
11   there is a "reasonable probability that the stakes exceed," $75,000.  *See Brill v.*
12   *Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005).  A defendant is
13   not obliged to research, state and prove Plaintiff's claims for damages.  *Singer v.*
14   *State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).  A defendant can
15   establish the amount in controversy by the allegations in the Complaint, or by
16   setting forth facts in the notice of removal that demonstrate that the amount placed
17   in controversy by Plaintiff exceeds the jurisdictional minimum.  *Singer*, 116 F.3d at
18   377.

19        19.    The amount in controversy is based on the assumption that Plaintiff
20   prevails on all claims.  *See Kenneth Rothschild Trust v. Morgan Stanley Dean*
21   *Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002); *Jackson v. American Bankers*
22   *Ins. Co.*, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997) ("[t]he appropriate measure [of
23   the amount in controversy] is the litigation value of the case assuming that the
24   allegations of the complaint are true and assuming a jury returns a verdict for the
25   plaintiff on all claims made in the complaint").  The ultimate inquiry is what amount
26   is put "in controversy" by the plaintiff's complaint, not what the defendant will
27   actually owe.  *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal.
28   2005); *see also Scherer v. Equitable Life Assurance Society of the United States*,

347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages is not what is considered when determining the amount in controversy; rather, it is the amount put in controversy by the plaintiff's complaint).  That the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy." *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018).

20.   **Damages Sought.**  Here, without admitting the validity of Plaintiff's causes of action (all of which are expressly denied by Northrop), the amount in controversy is in excess of $75,000, exclusive of interest and costs.  Although Plaintiff does not pray for a specific dollar amount, in his Complaint, he alleges claims for: (1) Age Discrimination in Violation of the Fair Employment and Housing Act ("FEHA"); (2) Retaliation in Violation of the FEHA; (3) Wrongful Termination in Violation of the FEHA; (4) Wrongful Termination in Violation of Public Policy; and (5) Intentional Infliction of Emotional Distress. In connection with his claims, Plaintiff seeks compensation for lost wages (past and future) and other employment benefits. *See* Nonnette Perry Decl., Exh. A (Complaint), ¶¶ 16, 24, 32, 39 and Prayer, ¶ 2.  Further, Plaintiff seeks "general and compensatory damages" "for severe mental anguish and emotional distress" and alleged "loss of earnings and other employment benefits and job opportunities," "lost salary, both front and back pay, bonuses, benefits, and any other benefits to which Plaintiff would have been entitled to by reason of his employment." *Id*. at ¶ 39 and Prayer, ¶¶ 1-2.  Plaintiff also seeks punitive damages.  *Id*. at ¶¶ 19, 27, 35, 41, and 46 and Prayer ¶ 3.  The amount-in-controversy requirements of 28 U.S.C. section 1332(a) exclude only "interest and costs." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007).  Thus, statutory, civil, and punitive damages, restitution, as well as attorneys' fees, which are sought by Plaintiff, may all be included in the

1   calculation. *See Guglielmino*, 506 F. 3d at 700.  Based on Plaintiff's allegations and

2   prayer, that amount exceeds $75,000.

3       21.    Lost Earnings and Other Employment Benefits.  In his Complaint,

4   Plaintiff requests lost earnings. *See* Nonnette Perry Decl., Exh. A (Complaint), ¶¶

5   16, 24, 32, 39 and Prayer, ¶ 2.  At the time of Plaintiff's termination from Northrop

6   on June 28, 2018, he was working full-time and earning $5,924 per pay period,

7   which was every two weeks.  *See* Lauck Decl., ¶ 3.  A reasonable estimate of

8   Plaintiff's alleged lost wages from the time of the termination of his employment

9   through trial, assuming the trial takes place one year from the date of this removal,

10  (i.e. 159 weeks of alleged lost wages) is at least **$470,958** based on Plaintiff's

11  earning $5,924 every two weeks while he was employed.  *Id.*; s*ee Chavez*, 888 F.3d

12  at 416 (holding that, for purposes of diversity jurisdiction, "the amount in

13  controversy encompasses all relief a court may grant on that complaint if the

14  plaintiff is victorious" including both past and future lost wages).  This amount of

15  potential compensatory damages is solely based on alleged lost wages and does not

16  include lost employment benefits, interest, potential future wages, and the other

17  potential damages Plaintiff seeks, as set forth below, which increases alleged

18  Plaintiff's economic losses.

19      22.    Compensation for Emotional Distress and Related Medical Expenses.

20  Prevailing plaintiffs in wrongful termination actions seek damages for emotional

21  distress.  *See Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1098-1100, 824 P.2d 680 (1992).

22  The emotional distress component of Plaintiff's alleged damages must be considered

23  in determining whether the amount in controversy requirement has been established.

24  *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).  Here, Plaintiff

25  seeks emotional distress damages, allegedly resulting from his alleged wrongful

26  termination, discrimination and retaliation and the intentional infliction of emotional

27  distress.  *See* Nonnette Perry Decl., Exh. A (Complaint), ¶¶ 17, 25, 33, 39 and 45

28

1   and Prayer, ¶ 1.  Indeed, Plaintiff alleged that he has suffered and will continue to

2   "extreme and severe mental anguish and emotional distress." *Id.* at ¶ 39.

3         23.   <u>Comparable Cases</u>.  A defendant may use damage awards in other

4   cases to establish that the amount in controversy exceeds $75,000.  *See Simmons v.*

5   *PCR Tech.*, 209 F. Supp. 2d 1029, 1033-34 (N.D. Cal. 2002).  Juries in California

6   have awarded well in excess of $75,000 for emotional distress damages in wrongful

7   termination cases.  *See, e.g., Stallworth v. City of Los Angeles*, Los Angeles Sup.

8   Ct., Case No. BC341480 (awarding $100,000 in emotional distress damages on

9   discrimination and retaliation claims).  Thus, if Plaintiff is able to prove his claims

10  at trial, it is conservative to estimate that Plaintiff will seek, and the jury may award,

11  **at least $75,000 for emotional distress damages**.

12        24.   <u>Punitive Damages</u>.  Plaintiff also seeks punitive damages. Nonnette

13  Perry Decl., Exh. A (Complaint), ¶¶ 19, 27, 35, 41, and 46 and Prayer ¶ 3.  Punitive

14  damages are also recoverable in wrongful termination actions.  *See Tameny v.*

15  *Atlantic Richfield Co.*, 27 Cal. 3d 167, 176, 610 P.2d 1330 (1980).  Punitive

16  damages should be considered when determining the amount in controversy.  *See*

17  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 947 (9th Cir. 2001); *Simmons*, 209 F. Supp.

18  2d at 1033 (recognizing that jury verdicts in other similar cases in California "amply

19  demonstrate the potential for large punitive damage awards in employment

20  discrimination cases.").  In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S.

21  408, 425 (2003), the United States Supreme Court held that the longstanding

22  historical practice of setting punitive damages at two, three, or four times the size of

23  compensatory damages, while "not binding," is "instructive," and that "[s]ingle-digit

24  multipliers are more likely to comport with due process."  Here, as shown above,

25  Plaintiff is seeking compensatory general damages of at least $545,958 ($470,958 +

26  $75,000).  Utilizing the ratio of 2:1 that *State Farm* found to be "instructive" (but

27  without conceding its ultimate propriety for use in this case), **the potential punitive**

28  **damages award in this action is approximately $1,091,916** even though Northrop

-9-

denies that Plaintiff has properly alleged or can ultimately establish the necessary conditions for obtaining exemplary damages.

25.   <u>Attorneys' Fees</u>. Plaintiff also seeks to recover attorneys' fees. Nonnette Perry Decl., Exh. A (Complaint), ¶¶ 18, 26, and 34 and Prayer, ¶ 6. Requests for attorneys' fees should be taken into account in ascertaining the amount in controversy.  *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory).  Federal courts in California have granted motions for attorneys' fees in age discrimination cases similar to the instant case and awarded fees in excess of $150,000.  *See e.g., Real v. Continental Group, Inc.*, 653 F.Supp. 736, 744 (N.D. Cal. 1987) (holding in 1987 that an award of $175,000 in attorney fees was appropriate in age discrimination action brought on behalf of single plaintiff); *Crommie v. State of Cal., Public Utilities Com'n*, 840 F.Supp. 719, 726 (N.D. Cal. 1984) (awarding $637,440 in attorneys' fees to four plaintiffs who prevailed on age discrimination claims, which amounts to $159,360 in attorneys' fees per plaintiff).  Accordingly, a conservative estimate of the **attorneys' fees that are likely to be sought in this case is $150,000**.

26.   Based on Plaintiff's allegations and his prayer for relief in which he seeks compensatory and special damages, punitive damages and attorneys' fees, a **reasonable estimate of the amount in controversy is $1,241,916**, which far exceeds the $75,000 jurisdictional threshold.  *See White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003) ("the lengthy list of compensatory and punitive damages sought by [the plaintiff], when combined with attorney's fees" demonstrated that the amount in controversy exceeded $75,000").

27.   A copy of this Notice of Removal will be filed with the Superior Court of the State of California for the County of Los Angeles and served upon all adverse parties as required by 28 U.S.C. section 1446(d), and an appropriate notice of

-10-

1   compliance with 28 U.S.C. section 1446(d) also shall be served and filed in the

2   above entitled Court.

3        WHEREFORE, Northrop hereby removes the above-entitled civil action from

4   the Superior Court of the State of California for the County of Los Angeles to this

5   Court.

6   Dated:  July 16, 2020

7                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

8

9        By        /s/ Whitney Nonnette Perry
10                     SAMANTHA C. GRANT
11                  WHITNEY NONNETTE PERRY
                     Attorneys for Defendant
12                  NORTHROP GRUMMAN SYSTEMS
                           CORPORATION
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4820-3067-2578.4          DEFENDANT NORTHROP GRUMMAN SYSTEMS CORPORATION'S
                               NOTICE OF REMOVAL OF CIVIL ACTION